**AMQUIP CORPORATION, et al.**

v.

**ADMIRAL INSURANCE COMPANY.**

Civ.A. No. 03–4411.

United States District Court,
E.D. Pennsylvania.

Sept. 28, 2005.

Joann M. Lytle, McCarter & English, LLP, Philadelphia, PA, for Amquip Corporation, et al.

Edward C. Mintzer, Jr., Rawle & Henderson LLP, Philadelphia, PA, for Admiral Insurance Company.

### MEMORANDUM AND ORDER

SAVAGE, District Judge.

In this insurance bad faith action arising out of its failure to defend its insureds in a state court lawsuit, the defendant Admiral Insurance Company ("Admiral") has moved, pursuant to FED. R. CIV. P. 15(a), for leave to amend its answer to add reliance on advice of counsel as a defense. The plaintiffs, Amquip Corporation and four of its employees (collectively referred to as "Amquip"), oppose the amendment, arguing that the request comes too late and that defense counsel had represented during discovery that Admiral was not asserting the defense. Admiral contends that the delay is the result of its misunderstanding of a procedural order bifurcating discovery into coverage and bad faith phases.

We conclude that the failure to assert the defense earlier or to move for leave to amend sooner was not inadvertent but was intentional. Yet, the delay has not prejudiced Amquip to an extent warranting refusal of the amendment. Therefore, mindful of the strong preference for granting amendments freely under Rule 15 so that a case is decided on the merits, we shall grant Admiral's motion to amend its defenses and require it to reimburse Amquip its costs and attorneys' fees caused by its calculated delay in requesting leave to amend and disavowing reliance of counsel defense earlier.

### Procedural Background

This action has its genesis in a complaint filed in the Ohio state court against Amquip Corporation and four of its employees.[1] Amquip timely notified Admiral of the claim and requested Admiral to provide a defense under the commercial general liability policy issued by it. Admiral denied coverage and refused to defend Amquip.[2] After its repeated requests for reconsideration were rejected, Amquip brought this action seeking a

---

1. *Anthony Crane Rental, L.P. d/b/a Maxim Crane Works v. Amquip Crane Corp., et al.,* No. A0207475, Court of Common Pleas of Hamilton County, Ohio. (filed Sept. 26, 2002).

2. *Letter from Mansfield to Amquip, October 12, 2002* (Amquip App., Ex. 12) (Document No. 9).

declaration that Admiral had a duty to defend the Ohio lawsuit and damages under Pennsylvania's bad faith statute for its failure to defend.[3]

Amquip filed its complaint on July 29, 2003. In its answer filed on August 28, 2003, Admiral included affirmative defenses and counterclaims. After unsuccessful mediation, we entered an order fixing deadlines for completing discovery and for filing cross motions for summary judgment on the coverage issue. At the same time, we stayed discovery relating to the bad faith claim. After discovery on the coverage issue was completed, the parties filed summary judgment motions. On March 31, 2005, the defendant's motion for summary judgment was denied and the plaintiffs' motion for partial summary judgment was granted, declaring that Admiral had a duty to defend Amquip and its employees in the underlying Ohio state court action.

On April 28, 2005, after conferring with the attorneys for the parties, we entered an order governing the procedure on the bad faith claim and set July 27, 2005 for the completion of discovery. On May 23, 2005, the defendant filed the instant motion. In the face of the plaintiffs' opposition, oral argument was heard on July 20, 2005.[4] At the conclusion of the argument, we withheld decision and allowed Amquip to engage in discovery of Admiral's purported reliance on advice of counsel in denying coverage pending disposition of the motion to amend.

**Legal Standard**

■ Keeping in mind that the purpose of Rule 15 is to have a case decided on the merits rather than on a technicality, leave to amend a pleading should be freely granted. *Shane v. Fauver*, 213 F.3d 113, 115–17 (3d Cir.2000); *Berkshire Fashions, Inc. v. M.V. Hakusan II*, 954 F.2d 874, 886–87 (3d Cir. 1992). Factors considered are undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by previously allowed amendments, un-

due prejudice to the opposing party, and futility of the amendment. *Foman v. Davis* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Delay alone does not preclude amendment. It must be coupled with a resultant burden on the court or prejudice to the other party. *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001). In considering the delay, we must ask why Admiral had not sought amendment sooner. *Id.*

■ Undue prejudice to the party opposing the amendment justifies denying leave to amend. A party is unduly prejudiced if amendment would cause surprise, result in additional discovery, or add cost in the preparation to defend against new facts or theories. *Cureton,* 252 F.3d at 273. Consequently, we must also ask whether Amquip will suffer any hardship if the amendment is allowed. *Id.*

■ In reciting the factors to be considered in the amendment analysis, some cases use the disjunctive, creating the impression that any one of the factors alone justifies denying amendment. *Cureton,* 252 F.3d at 273 (citing *Foman,* 371 U.S. at 182, 83 S.Ct. 227). If that were so, delay alone could prohibit amendment. Such a result would subvert the principle that prejudice to the non-moving party is the touchstone for the denial of an amendment and overshadow the goal of having cases decided on the merits. Thus, we must balance the prejudice to the non-moving party against the harm to the movant if leave is not granted.

In the context of this case, we examine Admiral's conduct, the reason for its delay and any prejudice that Amquip might suffer if the amendment is allowed.

**Analysis**

■ More than once its attorney denied that Admiral was asserting that it had relied upon the advice of counsel when it denied coverage. That Admiral may have relied upon coverage counsel's advice was first revealed during the deposition of its claims

---

**3.** 42 Pa. Cons.Stat. Ann. § 8371.

**4.** A detailed discussion of the coverage issue is contained in the memorandum opinion dated March 31, 2005. *Memorandum and Order,* Mar.

31, 2005 (Document No. 14); *Amquip Corp. v. Admiral Ins. Co.,* No. Civ.A. 03–4411, 2005 WL 742457 (Mar. 31, 2005).

handler who had denied coverage, Scott Mansfield, when Admiral's current attorney provided an email that had not been produced in response to Amquip's document requests.[5] At that point, Amquip's attorney attempted to question Mansfield regarding the advice and whether he had relied upon it. Admiral's attorney objected, invoking attorney-client privilege and unequivocally stating that Admiral was not asserting the advice of counsel defense.[6] Significantly, Admiral's counsel acknowledged that the content of Mansfield's communications with coverage counsel would have been discoverable in the bad faith context if Admiral had been relying on the advice of counsel defense. But, he clearly disavowed that Admiral was asserting such a defense, stating "If we were to assert as part of our defense that reliance upon coverage counsel was an explanation for actions taken in this process in the bad faith context, then I understand what you're saying that a coverage counsel opinion may be discoverable. But we're not asserting such a situation as you're aware." [7]

One week later during the deposition of Jane Hill, the supervisor who approved Mansfield's decision to deny coverage, counsel reiterated that the advice of counsel defense was not in the case. When Amquip's attorney asked whether she had consulted coverage counsel before deciding to disclaim coverage, Admiral's lawyer objected. Citing attorney-client privilege, he represented again that "we are not going to in any sense rely on coverage counsel opinion in any form or fashion." [8] At the same time, he specifically incorporated his statements made earlier at Mansfield's deposition.

To compound the problem, Hill's subsequent response in her deposition confirmed that Admiral was not relying on the defense.

When defense counsel allowed her to answer after reaching an agreement with Amquip's attorney that her answering would not constitute a waiver of the privilege, Hill testified as follows: "I don't know for sure [whether Admiral consulted coverage counsel]. No would be my answer." [9] Certainly, this answer would lead any reasonable attorney to forego discovery along these lines. Consequently, Amquip's attorney did not pursue such an inquiry.

Defense counsel proffers the excuse that he misunderstood the court's original scheduling order that had stayed bad faith discovery pending a decision on the coverage question. His statements at the deposition of Mansfield and Hill are at odds with his current contention. He unequivocally represented that Admiral was not asserting the defense --- even in the context of bad faith.

The possibility of raising the advice of counsel defense was not considered for the first time until after Admiral answered the complaint or after the decision on the coverage issue. It had been contemplated before Admiral filed its original answer with affirmative defenses on August 28, 2003. For reasons which have not been disclosed, it was consciously and deliberately decided that the defense would not be asserted. When he reviewed the draft answer, Mansfield discussed the defense with current counsel. He now does not recall why they decided not to assert the defense then.[10] Thus, the decision not to forego the defense, whether for strategic or tactical advantage, was made prior to any stay of bad faith discovery, and Admiral's excuse that it had relied on its understanding of bifurcated discovery to wait to decide is not acceptable.

There is no question that Admiral's delay was inexcusable. But, that does not end the

---

5. At oral argument, Admiral's attorney explained that Mansfield first told him about the email referencing coverage counsel's advice on the morning of his deposition, weeks after Admiral had produced its claims file pursuant to Amquip's document requests. Tr. 7/19/2005 at 33.

6. *Mansfield Dep. 6/22/04* at 75, 132 (Amquip Resp. Ex. A, C) (Document No. 18).

7. *Mansfield Dep. 6/22/04* at 75 (Amquip Resp. Ex. A) (Document No. 18).

8. *Hill Dep. 6/29/04* at 37 (Amquip First Suppl. Resp. Ex. A) (Document No. 25).

9. *Hill Dep. 6/29/04* at 39 (Amquip First Suppl. Resp. Ex. A) (Document No. 25).

10. *Mansfield Dep. 8/3/05* at 193 (Amquip. Second Suppl. Resp. Ex. B) (Document No. 28).

analysis. We must determine whether Amquip suffered any prejudice as a result of the delay. If it did, we then must balance Amquip's harm against Admiral's conduct.

At oral argument, Amquip's counsel complained that her discovery was impaired by Admiral's belated assertions of the advice of counsel defense. She had already deposed Mansfield and Hill, the two employees responsible for the decision to deny coverage, and had been prevented from questioning them on issues touching upon reliance on coverage counsel's advice when Admiral's lawyer invoked attorney-client privilege and represented that the defendant was not asserting an advice of counsel defense.

To obviate any prejudice to Amquip's ability to conduct discovery, we allowed Amquip's counsel to depose whomever she wanted on issues touching upon Admiral's purported reliance on the advice of counsel, including redeposing Mansfield and Hill. She did depose the attorney who issued the opinion letter after Mansfield had denied coverage as well as Mansfield and Hill again.

The delay affected Amquip's ability to pursue discovery. Coverage counsel, Michael Smakula, gave an opinion limited to whether coverage for defamation or commercial disparagement applied. He could not recall if he considered whether anything in the underlying state court complaint triggered coverage under any other portion of the policy.[11] Nor did he recall whether he saw Admiral's original denial letter of October 14, 2002, before issuing his opinion letter.[12] He does not know if he was asked to focus on only personal and advertising injury sections of the policy.[13] Answers to these questions could have been found in his personal notes and electronic files.[14] However, those files had been destroyed.[15]

Smakula would not have been deposed in the coverage phase of the case even if Admiral had asserted the advice of counsel defense because the defense applied only to the bad faith claim. Consequently, the first time he would have been deposed would have been after April 28, 2005. He was deposed just over three months later. Hence, we cannot find that his lack of memory of certain things was attributable to Admiral's delay in moving to amend.

■ Though Amquip does not specifically cite futility as a basis for denying the amendment, it infers its application. Counsel argued that the opinion of counsel which Admiral now wishes to rely upon was merely a "prophylactic" measure, coming after Admiral had already denied coverage. Indeed, the deposition testimony confirms that coverage counsel was not contacted until after the denial of coverage.

What happened after Admiral's decision to deny coverage is somewhat murky. Whether Mansfield contacted coverage counsel to cover his tracks or to determine whether reconsideration of his decision was necessary is a question for the fact finder. We do not accept Amquip's invitation to make this call. Amquip is free to explore these possibilities at trial.

### Conclusion

The harm Amquip suffered as a result of Admiral's inexcusable dilatoriness is not sufficient to deny the amendment because it was remedied by our allowing Amquip additional discovery. Not to hold Admiral accountable for the additional costs and time caused by its strategy would reward it for its delay. Therefore, we shall allow the amendment and award Amquip costs and attorneys' fees to be determined.

---

11. *Smakula Dep.* at 67–68 (Amquip. Second Suppl. Resp. Ex. A) (Document No. 28).

12. *Smakula Dep.* at 30 (Amquip. Second Suppl. Resp. Ex. A) (Document No. 28).

13. *Smakula Dep.* at 45 (Amquip. Second Suppl. Resp. Ex. A) (Document No. 28).

14. *Smakula Dep.* at 53 (Amquip. Second Suppl. Resp. Ex. A) (Document No. 28).

15. *Smakula Dep.* at 53 (Amquip. Second Suppl. Resp. Ex. A) (Document No. 28). Resolving a discovery dispute, we ordered the production of Admiral's entire claim file by June 4, 2005. Admiral purportedly complied in a timely manner. Not until Mansfield's second deposition on June 22, 2005, was an email saying that Admiral relied on coverage counsel produced.

202

### ORDER

**AND NOW,** this 28th day of September, 2005, upon consideration of the Defendant Admiral Insurance Company's Motion for Leave to File Answer with Amended Separate Defenses and Counterclaim (Document No. 17) and the plaintiffs' response and all supplemental filings, and after oral argument, it is **ORDERED** that the motion is **GRANTED** and the defendant shall file an amended complaint adding the defense of advice of counsel no later than **October 4, 2005.**

**IT IS FURTHER ORDERED** that the defendant shall reimburse the plaintiffs the cost and attorneys' fees incurred as a result of the defendant's delay in asserting the defense. If the parties cannot agree, the amount of the reimbursement shall be fixed at a hearing which shall be held after trial.